In the

# United States Court of Appeals

*for the*

# Tenth Circuit

THE SCO GROUP, INC., a Delaware corporation,

*Plaintiff Counterclaim Defendant-Appellant,*

– v. –

INTERNATIONAL BUSINESS MACHINES CORPORATION,

*Defendant Counterclaimant-Appellee.*

*Appeal from a Decision of the United States District Court for the District Of Utah, Salt Lake City, Case No. 2:03-cv-00294-DN, Honorable David O. Nuffer, U.S. District Judge*

## REPLY BRIEF OF PLAINTIFF COUNTERCLAIM DEFENDANT-APPELLANT
### *Oral Argument Is Requested*

STUART H. SINGER
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, Florida 33301
(954) 356-0011 Telephone
(954) 356-0022 Facsimile
ssinger@bsfllp.com

JASON C. CYRULNIK
EDWARD NORMAND
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
(914) 749-8200 Telephone
(914) 749-8300 Facsimile
jcyrulnik@bsfllp.com
enormand@bsfllp.com

BRENT O. HATCH
MARK F. JAMES
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
(801) 363-6363 Telephone
(801) 363-6666 Facsimile
bhatch@hjdlaw.com
mjames@hjdlaw.com

*Attorneys for Plaintiff Counterclaim Defendant-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT .......................................................................................................2

I.    THE DISTRICT COURT ERRED IN GRANTING IBM'S
     MOTION FOR SUMMARY JUDGMENT ON SCO'S
     UNFAIR COMPETITION CLAIM ...........................................................2

     A.    IBM had a Duty That Existed Outside of the Terms of the
          JDA not to Misappropriate SCO's Code....................................3

     B.    IBM's Alternative Theories for Dismissal Were Not
          Adopted by the District Court and Have No Merit .............................5

          1.    SCO Has Standing to Assert Its
               Unfair Competition Claim ..........................................5

          2.    SCO's Unfair Competition Claim is Timely ..............................7

               i.    The JDA's Limitations Provision
                    Does Not Apply ..........................................7

               ii.    SCO's Claim Is Timely Under the
                    Continuing Tort Doctrine ...............................8

                iii.    Even if applicable, the Two Year Period
                     Did Not Start Prior to April 2001 Because
                     IBM Concealed Its Wrongful Actions.............................9

          3.    Federal Copyright Law Does Not
               Preempt SCO's Claim ..........................................10

II.   THE DISTRICT COURT ERRED IN GRANTING IBM'S
     MOTION FOR SUMMARY JUDGMENT ON SCO'S
     TORTIOUS INTERFERENCE CLAIMS.....................................................13

A.    SCO Presented Sufficient Admissible Evidence to
Support a Claim for Tortious Interference by IBM ............................13

    1.    IBM Interfered with SCO's Business Relationships ...............13

    2.    IBM Fails to Rebut SCO's Indirect
Interference Claims ....................................................................14

B.    IBM's Tortious Interference Caused Damages to SCO......................15

C.    IBM's Alternative Theories for Dismissal Were Not
Adopted by the District Court and Have No Merit............................16

    1.    IBM's Actions Constituted "Improper Means"........................17

    2.    IBM's improper Linux Actions Were Not
"Privileged" under Utah Law.....................................................18

III.    THE DISTRICT COURT ABUSED ITS DISCRETION IN
DENYING SCO'S MOTION FOR LEAVE TO AMEND...........................18

A.    SCO's Discovery of New Evidence Constitutes
"Good Cause" for SCO to Amend Its Complaint ...............................18

B.    Leave to Amend Should Be Freely Given Under Rule 15(a) .............22

    1.    SCO's Motion to Amend Its Complain Was Not
Unduly Delayed .........................................................................23

    2.    SCO's Motion to Amend Its Complaint Was Not
Prejudicial to IBM.....................................................................23

    3.    SCO's Proposed Copyright Claim Is Not Futile.......................25

CONCLUSION .......................................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Alexander Interactive, Inc. v. Adorama, Inc.*,
  No. 12 Civ. 6608 (PKC)(JCF), 2014 WL 113728 (S.D.N.Y. Jan. 13, 2014).......23

*Bauchman for Bauchman v. W. High Sch.*,
  132 F.3d 542 (10th Cir. 1997) .....................................................................23

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*,
  361 F. Supp. 2d 283 (S.D.N.Y. 2005) ...................................................3

*Brink's, Inc. v. City of N.Y.*,
  528 F. Supp. 1084 (S.D.N.Y. 1981) ...................................................25

*Bryant v. Farmers Ins. Exch.*,
  432 F.3d 1114 (10th Cir. 2005) ...........................................................14

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
  388 F. Supp. 2d 37 (N.D.N.Y. 2005)...............................................3, 4

*CMAX/Cleveland, Inc. v. UCR, Inc.*,
  804 F. Supp. 337 (M.D. Ga. 1992) ....................................................11

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
  982 F.2d 693 (2d Cir. 1992) ..............................................................10

*Crocker v. Piedmont Aviation*,
  311 U.S. App. D.C. 1 (1995) ...............................................................24

*DiFilippo v. Barclays Capital, Inc.*,
  No. 05 Civ. 4990 VM JCF, 2006 WL 1716860 (S.D.N.Y. June 20, 2006) .........23

*Dona Ana Mut. Domestic Water Consumers Ass'n v. City of Las Cruces*,
  516 F.3d 900 (10th Cir. 2008) ............................................................14

*Ehat v. Tanner*,
  780 F.2d 876 (10th Cir. 1985) ...........................................................12

*Fireman's Fund Ins. Co. v. Warehouse No. 1, Inc.*,
  No. 89 Civ. 4069, 1989 U.S. Dist. LEXIS 13507 (S.D.N.Y. Nov. 13, 1989)......25

*Forstmann v. Culp*,
114 F.R.D. 83 (M.D.N.C. 1987) ..........................................................................19

*Fuller v. Favorite Theaters Co. of Salt Lake*,
230 P. 2d 335 (Utah. 1951) ...................................................................................6

*General Stencils, Inc. v. Chiappa*,
219 N.E.2d 169 (N.Y. 1966) .................................................................................9

*Gluco Perfect, LLC v. Perfect Gluco Prods., Inc.*,
2014 WL 4966102 (E.D.N.Y. Oct. 3, 2014) .......................................................11

*Grynberg Prod. Corp. v. Susman Godfrey, L.L.P.*,
No. 10-1248, 2012 U.S. App. LEXIS 3316 (10th Cir. Feb. 16, 2012)................25

*Gull Labs, Inc. v. Diagnostic Tech., Inc.*,
695 F. Supp. 1151 (D. Utah 1988).......................................................................14

*Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*,
82 F.3d 1533 (10th Cir. 1996) .............................................................................10

*Huckshold v. HSSL, L.L.C.*,
344 F. Supp. 2d 1203 (E.D. Mo. 2004) ...............................................................11

*In re Britton*,
288 B.R. 170 (Bankr. N.D.N.Y. 2002) ..................................................................6

*In re Hoopiiaina Trust*,
144 P.3d 1129 (Utah 2006)....................................................................................9

*In re Indep. Servs. Orgs. Anti-Trust Litig.*,
85 F. Supp. 2d 1130 (D. Kan. 2000).....................................................................26

*Jacobsen v. Deseret Book Co.*,
287 F.3d 936 (10th Cir. 2002) .............................................................................20

*Kindergartners Count, Inc. v. Demoulin*,
171 F. Supp. 2d 1183 (D. Kan. 2001)...................................................................11

*Kling v. Hallmark Cards Inc.*,
225 F.3d 1030 (9th Cir. 2000) .............................................................................21

iv

*Kreinik v. Showbran Photo, Inc.*,
  No. 02Civ.1172(RMB(DF), 2003 WL 22339268 (S.D.N.Y. Oct. 14, 2003).......24

*Leigh Furniture and Carpet Co. v. Isom*,
  657 P.2d 293 (Utah 1982)............................................................................ 15, 18

*LNC Inv. Inc. v. Rep. of Nicar.*,
  No. 96 Civ. 6360 (JFK), 1999 WL 92603 (S.D.N.Y. Feb. 19, 1999) ...................6

*MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*,
  952 F.2d 769 (3d Cir. 1991) ...............................................................................20

*Medinol Ltd. v. Boston Sci. Corp.*,
  346 F. Supp. 2d 575 (S.D.N.Y. 2004) ..................................................................4

*Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*,
  23 F. Supp. 2d 439 (S.D.N.Y. 1998) ....................................................................9

*Michalek v. Amplify Sports & Entertainment LLC*,
  No. 11 Civ. 508 (PGG), 2012 WL 2357414 (S.D.N.Y. June 20, 2012)...............24

*Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*,
  No. 88-CV-819, 1992 WL 121726 (N.D.N.Y. May 23, 1992) .............................5

*Nobel Ins. Co. v. City of New York*,
  No. 00-CV-1328 (KMK), 2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006) ............8

*Nuss v. Sabad*,
  976 F. Supp. 2d 231 (N.D.N.Y. 2013)..................................................................5

*Pravin Banker Assoc., LTD. v. Banco Popular De Peru*,
  109 F. 3d 850 (2d Cir. 1997) ...............................................................................6

*Raymond Int'l, Inc. v. City of N.Y.*,
  511 F. Supp. 773 (S.D.N.Y. 1981) .....................................................................26

*Roslyn Assocs. v. Inc. Vill. of Mineola*,
  443 N.Y.S.2d 424 (N.Y. App. Div. 1981)............................................................7

*Russello v. U.S.*,
  464 U.S. 16 (1983)................................................................................................7

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assoc., Inc.*,
  28 P. 3d 669 (Utah 2001)...........................................................................6

*Transaero, Inc. v. Chappell*,
  No. 13-cv-5752, 2014 WL 1783732 (E.D.N.Y. 2014)...........................................3

*United States v. Continental Illinois Bank & Trust Co.*,
  889 F.2d 1248 (2d Cir. 1989) ...............................................................24

**Other Authorities**

18 Am. Jur. 2d *Copyright and Literary Property* § 12 (2015) ................................10

*N.Y. Gen. Oblig. Law § 13-101*.................................................................6

*Restatement (First) of Torts* § 757 (1939) .................................................4

## INTRODUCTION

SCO showed in its opening brief that this suit arises from IBM's deceitful and wrongful actions to misappropriate SCO's most valuable intellectual property and to undermine SCO's business relationships. IBM exploited its relationship with SCO through Project Monterey to gain access to and misappropriate SCO's proprietary code, to displace SCO from the marketplace. As part of its plot, IBM cobbled together, in its own words, a non-working "sham release" of Project Monterey; used SCO's UnixWare code obtained through that sham release in IBM's own AIX for Power operating system; and then released SCO's UnixWare code into the hands of open-source Linux developers. IBM knew it was taking something to which it did not have rights, and that its "sham release" was an unjustified means to an improper end.

The direct impact of IBM's dishonest conduct on SCO's business was immediate and profound. SCO's revenues plummeted 74% from 2000 to 2002 as customers migrated to Linux "upgraded" with SCO's misappropriated code. Linux had been in the marketplace for nine years, but large corporations adopted it as enterprise software only after it was fortified with SCO's stolen code. When SCO tried to protect its rights by pursuing license arrangements with Linux users, IBM took the further step of threatening SCO and its business partners, using its industry power and influence to consolidate its ill-gotten advantage.

Seeking now to justify the district court's improper grant of summary judgment dismissing SCO's tort claims, IBM wrongly argues that (1) but for the JDA, IBM was free to misappropriate SCO's proprietary code; (2) the self-serving declarations of IBM's own employees show that IBM did not tortiously interfere with SCO's business relationship; and (3) SCO "should have known" of IBM's copyright infringement even prior to the production of the evidence necessary to state a copyright claim. The alternative grounds for affirming the judgment are without merit. This Court should reject IBM's arguments and reverse and remand the case for further proceedings.

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN GRANTING IBM'S MOTION FOR SUMMARY JUDGMENT ON SCO'S UNFAIR COMPETITION CLAIM

IBM does not and cannot defend the district court's erroneous reasoning in dismissing SCO's unfair competition claim, instead re-characterizing the district court's decision and offering alternative bases for dismissal. Neither the district court nor IBM has set forth any valid basis for the dismissal.[1]

---

[1] IBM quarrels (at 23 n.6) over whether any act of commercial unfairness constitutes actionable unfair competition, but even under IBM's formulation of the tort, IBM's conduct qualifies as unfair competition.

**A.**  **IBM had a Duty That Existed Outside of the Terms of the JDA Not to Misappropriate SCO's Code**

IBM characterizes (at 19-22) the district court as having applied the proper legal tests in applying the independent tort doctrine, claiming that IBM "had no duty to Santa Cruz (or anyone else) concerning the code at issue except as set forth in the contract." IBM's position is contrary to the well-established law. The "tort of misappropriation . . . serve[s] to protect against . . . misappropriation of . . . information to [the tortfeasor's] own commercial benefit, to the detriment of" the injured party – even where a contract *also* "preclude[s] unauthorized disclosure of that information." *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 65 (N.D.N.Y. 2005).

Where tort and contract claims are "clearly interrelated and to some degree mutually dependent," an independent claim for misappropriation is nevertheless viable where it is "not grounded solely in the contractual relationship between the parties, but rather exists independently of the parties' contractual obligations." *Id.*; *see also Transaero, Inc. v. Chappell*, No. 13-cv-5752, 2014 WL 1783732, at *12 (E.D.N.Y. 2014) (defendant's duty to refrain from misappropriating confidential information existed "independently" of the contract at issue); *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283 (S.D.N.Y. 2005) (misappropriation "is an independent tort which is not grounded solely in the contractual relationship between the parties, but rather exists independently of the

parties' contractual obligations"); *Restatement (First) of Torts* § 757 (1939) ("*[W]hether or not there is a breach of contract*, the rule stated in this Section subjects the actor to liability if his disclosure or use of another's trade secret is a breach of the confidence reposed in him by the other in disclosing the secret to him.") (emphasis added).[2]

The district court thus erred as a matter of law in reducing the relevant question to "whether an express contract provision treats the appropriation of SCO's code." (A9603.) The tort law itself placed a duty on IBM not to misappropriate SCO's proprietary code for IBM's commercial benefit and to SCO's detriment. *Cargill*, 388 F. Supp. 2d at 64. SCO has presented ample evidence that IBM breached that duty, by (1) misappropriating SCO's code for use in both Linux and AIX for Power, (2) deceiving Santa Cruz and SCO about its intentions regarding Project Monterey and Linux, (3) fraudulently making a sham release of the IA-64Product, and (4) depriving SCO of other partnership and business opportunities by pretending to support Project Monterey long after IBM had decided to terminate the project.

---

[2]    IBM argues (at 20) that "use of [SCO's] code was not 'collateral and extraneous to the terms and conditions of the contract that were allegedly breached,'" citing *Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575 (S.D.N.Y. 2004). The court in *Medinol*, however, found that the proprietary information at issue was not protectable, and thus "[p]rotection in [the] case must come from a different source of law." *Id.* at 607. IBM declines to acknowledge this important distinction.

The district court further erred in concluding that as a matter of law IBM did not owe SCO a heightened or fiduciary-like duty. "Whether a fiduciary relationship exists is a question of fact, and conflicting evidence as to its existence will preclude a motion for summary judgment." *Nuss v. Sabad*, 976 F. Supp. 2d 231, 248 (N.D.N.Y. 2013) (citing *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, No. 88-CV-819, 1992 WL 121726, at *21 & n. 34 (N.D.N.Y. May 23, 1992)). IBM cites no authority for the proposition that the relationship of heightened trust and shared interests between SCO and IBM in Project Monterey failed to give rise to a heightened or fiduciary-like duty. Where a reasonable factfinder could determine that a relationship of trust and confidence existed between SCO and IBM (Dkt. 861 at 36), the district court erred in concluding that none existed as a matter of law.

### B. IBM's Alternative Theories for Dismissal Were Not Adopted by the District Court and Have No Merit

IBM raises alternative theories for dismissal that the district court did not accept. This Court should reject those theories as well.

#### 1. SCO Has Standing to Assert Its Unfair Competition Claim

IBM wrongly contends that SCO lacks standing to pursue its unfair competition claim because SCO was not a party to the JDA, which contains a non-assignment provision. This fact is irrelevant. SCO's claim is not for breach of the JDA. The non-assignment provision prohibited only the assignment of certain

rights related to performance under the contract, not the assignment of claims based on duties under the tort law.

Under New York law, "only express limitations on assignability are enforceable." *In re Britton*, 288 B.R. 170, 173 (Bankr. N.D.N.Y. 2002); *accord Pravin Banker Assoc., LTD. v. Banco Popular De Peru*, 109 F. 3d 850, 856 (2d Cir. 1997); *LNC Inv. Inc. v. Rep. of Nicar.*, No. 96 Civ. 6360 (JFK), 1999 WL 92603, at \*5 (S.D.N.Y. Feb. 19, 1999). Santa Cruz was not prohibited from assigning to SCO any and all legal claims it possessed against IBM. In addition, the transfer of Santa Cruz's rights to SCO does not fall within any of the exclusions for transferability of claims. *See N.Y. Gen. Oblig. Law § 13-101*.

Under Utah law, the result is the same: A non-assignment provision does not affect a party's right to assign legal claims. *See Fuller v. Favorite Theaters Co. of Salt Lake*, 230 P. 2d 335, 336 (Utah. 1951) (holding that a "provision prohibiting the assignability of the contract itself does not affect the assignability of a cause of action which has arisen from the breach"); *accord SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assoc., Inc.*, 28 P. 3d 669, 674 (Utah 2001). This result makes sense given that the policy behind a non-assignment provision is to ensure that a contracting party is not forced to do business with an unknown entity or otherwise to receive performance from a party with whom there is no

relationship or experience. That policy does not apply where the issue is the assignment of common law rights. (Dkt. 861 at 46.)

Santa Cruz assigned to SCO all of its "right, title and interest" in the transferred assets, which included the SVR4 code that IBM misappropriated into AIX for Power. (A5206-09.) SCO also acquired all of Santa Cruz's "rights and privileges pertaining to" this intellectual property, including all "rights to enforce confidentiality or similar obligations" in relation to the code, "the right, if any, to sue or bring other actions for past, present and future infringement thereof," and "any and all other forms of intellectual property right or proprietary right recognized anywhere in the world." *Id.* The parties' use of the sweeping term "interest" is the "most general term that can be employed to denote a right, claim, title or legal share in something." *Russello v. U.S.*, 464 U.S. 16, 21 (1983); *see, e.g.*, *Roslyn Assocs. v. Inc. Vill. of Mineola*, 443 N.Y.S.2d 424, 425 (N.Y. App. Div. 1981) (transfer of all right, title and interest in property presumably included pre-existing damages claims).

## 2. SCO's Unfair Competition Claim is Timely

### i. The JDA's Limitations Provision Does Not Apply

IBM does not contend that any portion of SCO's unfair competition claim is time-barred if the normal statutory limitations period applies. Instead, IBM relies on Section 22.3 of the JDA, which states that an "action related to a ***breach*** of this

Agreement must be filed no later than two years from the date of the breach."

A454-55 § 22.3 (emphasis added). Unfair competition, however, is an independent

tort action – not an "action related to the breach of" the JDA. The claim does *not*

concern a "breach." (Dkt. 861 at 32-34 (citing *Nobel Ins. Co. v. City of New York*,

No. 00-CV-1328 (KMK), 2006 WL 2848121, at *18 (S.D.N.Y. Sept. 29, 2006)

("[A] party to a contract does not surrender his right to resort to the Courts, with all

of their safeguards, unless he has agreed, in writing, to do so, by clear language.

Further, an agreement to do so will not be extended by construction or

implication.").)

## ii. SCO's Claim Is Timely Under the Continuing Tort Doctrine

Where unfair competition is a continuing tort, IBM's each use of SCO's

misappropriated code is a tort with its own limitations period. *Underwater*

*Storage, Inc. v. U.S. Rubber Co.*, 371 F.2d 950, 955 (D.C. Cir. 1966); *see also*

*Kwan v. Schlein*, 441 F. Supp.2d 491, 503 (S.D.N.Y. 2006) ("[U]nfair competition

occurring over a period of time can give rise to liability as a continuing tort."). It is

undisputed that IBM continued to sell its products with SCO's misappropriated

code. IBM's original release in October 2000 was only an "early adopter's" beta

test that was not intended for the public. (Dkt. 861 at 13-14.) IBM did not

publicly sell its infringing product until its "generally available" release of the

SVR4-enhanced AIX 5Lfor Power product in May 2001, the same date as the

sham PRPQ of the Monterey product.  (*Id*. at 14.)  Since this release was less than

two years from the filing of SCO's original complaint in March 2003, SCO is

entitled to sue for damages on virtually every sale at issue in this case.

### iii.  Even If Applicable, the Two Year Period Did Not Start Prior to April 2001 Because IBM Concealed Its Wrongful Actions.

SCO's unfair competition claim also would be timely under the JDA's two-

year provision in any event.  In light of IBM's concealment and deception, the two

years did not start to run until April-June 2001 at the earliest, less than two years

from when SCO filed suit.  Where the plaintiff "neither discovered nor reasonably

should have discovered the facts underlying the cause of action before the

limitations period expired" due to the defendant's concealment, then the limitations

period does not begin running "until the date the plaintiff possessed actual or

constructive knowledge of the facts forming the basis of his or her cause of

action."  *In re Hoopiiaina Trust*, 144 P.3d 1129, 1141 (Utah 2006); *accord

General Stencils, Inc. v. Chiappa*, 219 N.E.2d 169, 171 (N.Y. 1966); *Meridien Int'l

Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 446 (S.D.N.Y.

1998).

SCO's claim accrued only when IBM's deceptive scheme was executed with

the pretextual PRPQ of the IA-64 Product, the simultaneous first "generally

available" release of the SVR4-enhanced AIX 5L for Power, and the surprise

cancellation of the JDA. Until then, SCO did not know and did not have any basis to suspect that IBM had misappropriated SCO's code. (Dkt. 861 at 26-27.)

### 3. Federal Copyright Law Does Not Preempt SCO's Claim

IBM wrongly contends (at 30) that federal copyright law preempts the portion of SCO's unfair competition claim relating to IBM's unauthorized use of SCO's code in AIX for Power. IBM declines even to mention the controlling test, which dictates that SCO's claim is not preempted because it includes an "extra element" that makes it qualitatively different from a copyright claim.

If "a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1543 (10th Cir. 1996) (quotations omitted)); *accord* 18 Am. Jur. 2d *Copyright and Literary Property* § 12 (2015). Under this standard, there is no preemption of "unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) (cited with approval by this Court, as in both *Harolds Stores*).

The application of this standard has arisen, for example, where the parties entered into consulting and marketing agreements under which the defendants obtained "confidential and proprietary information." *Kindergartners Count, Inc. v. Demoulin*, 171 F. Supp. 2d 1183, 1192 (D. Kan. 2001). The plaintiff sued for unfair competition on the grounds that defendants "obtained confidential and proprietary information through their respective confidential relationships" and "used that protected information in developing [a competing] program." *Id.* The court held that plaintiff's claim was not preempted: "Proof of a confidential relationship and its breach are extra elements that distinguish this unfair competition claim from the copyright infringement claim." *Id.*; *see also Gluco Perfect, LLC v. Perfect Gluco Prods., Inc.*, 2014 WL 4966102, at *19 (E.D.N.Y. Oct. 3, 2014) (claims of unfair competition through misappropriation of trademark and trade name were not preempted because "a viable claim for unfair competition requires an additional showing of bad faith"); *CMAX/Cleveland, Inc. v. UCR, Inc.*, 804 F. Supp. 337, 359 (M.D. Ga. 1992) (misappropriation claims "not preempted because they involve the additional element of a breach of confidentiality, which was owed to [plaintiff] under the license agreement *and the common law*") (emphasis added); *Huckshold v. HSSL, L.L.C.*, 344 F. Supp. 2d 1203, 1208 (E.D. Mo. 2004) (allegation that defendant "permitted a third party, Miller, to copy the Software in violation of their agreement" was sufficient extra element).

IBM's reliance on *Ehat v. Tanner*, 780 F.2d 876 (10th Cir. 1985), overlooks the relevant bases for SCO's claim. As the *Kindergartners* court recognized, a breach of duty distinguishes a claim such as SCO's from a situation where, as in *Ehat*, the plaintiff's stolen work simply "found its way" to the defendants, who had "no part" in the theft and no relationship with the plaintiff. *Id*. at 877. In sharp contrast, SCO has presented abundant evidence that IBM had a relationship with SCO and directly participated in the theft and misuse of the code.

The "extra element" test thus defeats IBM's claim of copyright preemption of SCO's unfair competition claim. Utah and New York unfair competition law do not impose liability for mere copying or distribution of another's work, and SCO's unfair competition claim is not based on mere copying or distribution. Instead, it is based on IBM's misappropriation of the SCO code used in AIX for Power by a fraudulent, deceptive scheme, concealment and affirmative deception in breach of common law and fiduciary duties of confidentiality, loyalty and candor, and IBM's duping SCO into believing that IBM intended to partner with SCO in the development of a Monterey "family of products." Since SCO's unfair competition claim focuses on IBM's fraudulent and deceptive misconduct, federal law does not preempt SCO's unfair competition claim.

## II. THE DISTRICT COURT ERRED IN GRANTING IBM'S MOTION FOR SUMMARY JUDGMENT ON SCO'S TORTIOUS INTERFERENCE CLAIMS

IBM fails to rebut that the district court engaged in improper fact-finding and weighing of the evidence in granting summary judgment in IBM's favor on SCO's tortious interference claims. In this context again, IBM resorts to raising alternative theories for dismissal, which fail.

### A. SCO Presented Sufficient Admissible Evidence to Support a Claim for Tortious Interference

### 1. IBM Interfered with SCO's Business Relationships

IBM fails to acknowledge the significant evidence in SCO's favor, such as (1) the internal IBM e-mail that shows that IBM adopted a strategy to "discontinue any plans to work with SCO" and "avoid any association with SCO" (A6025-26); (2) IBM Vice President Karen Smith's threat that IBM would adopt its anti-SCO strategy the day before IBM did so (A4095); (3) Smith's indication to Hewlett-Packard that IBM was going to withdraw all their business activities from SCO, and that Intel should do the same (A2352 at 54:5-11); and (4) the other evidence of IBM's tortious interference set forth more fully in SCO's summary judgment opposition brief (Dkt 868). The only specific evidence that IBM attempts to address is the improperly excluded testimony of SCO's Darl McBride, claiming (at 35-36) that the testimony was "classic inadmissible hearsay." The exclusion of this testimony is in no way fatal to SCO's claim, and it was improperly excluded in

any event: The district court failed to consider the statement as evidence that speaks to Goldfarb's then-existing mental state.

Instead, IBM's argument (at 34) rests on self-serving sworn testimony from its own representatives. IBM makes no effort nor cites any authority that its testimony is sufficient to support a motion for summary judgment over SCO's evidence. IBM cites (at 35) cases holding only that a party's self-serving statements are evidence – not that they are *dispositive* evidence when weighed against the opposing party's evidence. *See Dona Ana Mut. Domestic Water Consumers Ass'n v. City of Las Cruces*, 516 F.3d 900, 912 (10th Cir. 2008) (finding that a party's affidavits served as a proper basis for a summary judgment where the opposing party was unable to present any admissible evidence that "raise[d] a genuine issue of material fact"); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) (finding summary judgment inappropriate where the district court improperly dismissed statements made by a party as improper opinion testimony). The district court acknowledged as much, stating that "IBM's alleged interference with Hewlett-Packard may constitute interference." (A9675.)

## 2.    <u>IBM Fails to Rebut SCO's Indirect Interference Claims</u>

SCO showed that conduct qualifies as permissible competition only where it is "not otherwise unlawful." *Gull Labs, Inc. v. Diagnostic Tech., Inc.*, 695 F. Supp. 1151, 1155 (D. Utah 1988). IBM rests its rebuttal on a blatant

mischaracterization of SCO's argument, stating (at 43) that "SCO claims only that IBM asked HP and others not to do business with SCO."  SCO does not allege that IBM *asked* HP to stop working with SCO, but rather that IBM *threatened* HP.  As IBM concedes (at 42), threats constitute improper means under Utah law.

In support of its mischaracterization, IBM cites (at 43) the Utah Supreme Court to assert "that 'efforts to persuade others . . . not to deal with certain entities' is, in fact, an example of 'legitimate persuasion,'" citing *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 303 (Utah 1982).  IBM fails to give context to the examples the court listed as acts of "legitimate persuasion," including "efforts to persuade others not to eat certain foods, use certain substances, [or] engage in certain activities."  *Id.*  The *Leigh* court in fact defines *improper* means to include "threats, or other intimidation" as well as conduct that "violate[s] an established standard of a trade or profession."  *Id.* at 308 (internal citations omitted).  Since SCO did in fact present evidence constituting threat, IBM's argument fails.

## B.    IBM's Tortious Interference Caused Damages to SCO

IBM contends (at 37) that SCO has not demonstrated that IBM's interference with these partners caused SCO damages.  IBM is wrong.  SCO's experts identified SCO's loss of partner support as a significant contributory cause of SCO's revenue losses and injury.  (A7413-14.)  In addition, contrary to IBM's position, SCO's experts did in fact quantify the damages that resulted as a result of

SCO's loss of business relations. (A6284-85.) The loss of partner support was caused by IBM's unfair competition, breach of contract, and other wrongful acts comprising the claim for tortious interference; additionally, IBM's wrongful contributions to Linux, which transformed Linux from a hobbyist tool to a commercially viable enterprise operating system, made it possible for SCO's once loyal partners to migrate away from its UNIX products to a Linux system. (Dkt. 868 at 48.)

IBM's assertion (at 38) that SCO failed to disclose any admissible evidence of damages during discovery is irrelevant because it did so in the expert reports it presented at the summary judgment stage. Contrary to IBM's mischaracterization (at 38), SCO did not and does not "fault the district court for insisting on too much precision in the computation of damages." Instead, SCO faults the district court for determining that the mere ability to imagine possible alternative causes for the decline of SCO's business sufficed to dismiss SCO's claims at summary judgment, when at a minimum genuine issues of fact exist as to the cause of SCO's losses. (A9676-78.)

## C.  IBM's Alternative Theories for Dismissal Were Not Adopted by the District Court and Have No Merit

IBM proffers additional theories for dismissal that the district court did not adopt. Those theories fail.

### 1.  IBM's Actions Constituted "Improper Means"

IBM argues (at 42-43) that it did not undertake its actions by "improper means" and that it therefore cannot be found liable for tortious interference.  IBM is wrong.  IBM employed a host of improper means, including:

1. deceiving Santa Cruz and SCO about its intentions regarding both Project Monterey and Linux" (Br. at 27);

2. fraudulently making a sham PRPQ of the IA-64Product (*id.*);

3. depriving Santa Cruz and Caldera of other partnership and business opportunities by pretending to support Monterey and the Santa Cruz–Caldera transaction long after it had decided to terminate the project (*id.*);

4. misappropriating code for use in both Linux and AIX for Power (*id.*);

5. adopting an anti-SCO strategy whereby it plotted to "discontinue any plans to work with SCO" and "avoid any association with SCO" (*id.* at 40-41);

6. and threatening then HP executive Richard Becker to "withdraw all their business activities with SCO." (*Id.*)

This conduct shows a pattern of improper means.  IBM correctly asserts (at 42) that improper means "commonly include violence, threats, deceit, defamation or disparagement, or violation of some established standard," citing *Leigh Furniture*,

657 P.2d at 308.  SCO showed in its opening brief that IBM engaged in everything on that list – short of outright violence.

### 2. IBM's improper Linux Actions Were Not "Privileged" under Utah Law

Contrary to IBM's assertions (at 43), IBM's improper Linux actions were not "privileged" under Utah law.  IBM appears to believe that a party can compete through improper means (as described above) and evade liability provided that the party was acting in its own economic interest.  That is an obvious misstatement of the "privilege" rule, as such a rule would eviscerate the improper means standard.  Competitive conduct is privileged if the defendant was exercising a "legal right." *Leigh Furniture*, 657 P.2d at 305 n.8.  There is no "legal right" to compete through improper means, as IBM did.  Thus, where IBM used improper means to execute its Linux initiative, IBM's conduct cannot be "privileged" simply because IBM was acting in its own economic self-interest.  (Dkt. 868 at 40-42.)

## III. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING SCO'S MOTION FOR LEAVE TO AMEND

IBM fails to rebut that the district court abused its discretion in denying SCO's motion for leave to amend its complaint based on newly disclosed evidence.

### A. SCO's Discovery of New Evidence Constitutes "Good Cause" for SCO to Amend Its Complaint

IBM does not (because it cannot) dispute that newly disclosed evidence constitutes good cause for granting leave to amend.  *See, e.g.*, *Forstmann v. Culp*,

18

114 F.R.D. 83, 86 (M.D.N.C. 1987) (good cause for leave where party "uncovered previously unknown facts during discovery that would support an additional cause of action"). Instead, IBM claims without basis that SCO knew or should have known of its potential copyright infringement claim prior to receiving the newly disclosed evidence of IBM's acts of copyright infringement. IBM is wrong, and the documents it cites do not remotely support its position.

When it filed its original and amended complaints, SCO did not know that IBM had used SVR4 code or technology in AIX for Power. A9017. In March and April 2004 – a full month after the district court's February deadline for amendment had passed – IBM dumped more than 900,000 pages of documents and 64 CDs of AIX and Dynix source code into discovery. (Dkt. 323 at 6.) Upon reviewing these documents, SCO discovered for the first time that 200,000 lines of its SVr4 code had been copied verbatim into at least two versions of IBM's AIX for Power products. (*Id.* at 9-11.) SCO uncovered this evidence of IBM's copying only through careful examination of documents and previously unavailable AIX source code that IBM produced in discovery, after the cut-off for the amendment of pleadings. SCO could not have gained access to the source code for AIX for Power from any other source to examine it for potential infringement until IBM produced that product in this litigation, in April 2004.

Yet IBM incorrectly contends (at 46) that "SCO had long been in possession of the very facts that it claimed serve as the basis for its new infringement claim." None of the eight documents cited by IBM, individually or collectively, provided notice of IBM's copyright infringement, for at least six reasons:

*First*, the law imposes additional protections for copyright holders like SCO, who have no "duty of inquiry" in the absence of evidence suggesting a reason for suspicion. *See, e.g.*, *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 950 (10th Cir. 2002); *MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 780 (3d Cir. 1991) ("Copyright Act does not recognize" a "never ending obligation to discover whether anyone to whom he ever supplied his software would copy it."). SCO never possessed evidence to trigger a duty to investigate. (Dkt. 369 at 6-7.)

*Second*, IBM's argument rested on its own mischaracterization of documents created during or before Project Monterey that reflect the parties' understanding regarding the "family" of products to be developed pursuant to Project Monterey. Those documents show that only *after* a joint IA-64 product was generally released – which never happened – would the other party be permitted to use IA-64-based source code in other products. Under the circumstances, these documents would not have put SCO on notice of anything other than the rationale for Project Monterey. (Dkt. 369 at 3.)

*Third*, all eight documents on which IBM relies refer generically to "AIX

5L" (which could mean either the Project Monterey product or IBM's AIX for

Power product) or a "System V printing sub-system" (a term used in connection

with all of SCO's UNIX products, including software for which IBM had a

license). (*See* Opp. Br. at 46 (citing A737-38, A742, A744, A759, A776, A780,

A822-23, A863-76).) The ambiguities in the documents independently preclude

any conclusion that SCO must have known about IBM's infringement. (Dkt. 369

at 8.)

*Fourth*, IBM ignores that the parties had heavily negotiated a draft Project

Supplement C which would have entitled IBM to use SCO's code in its AIX for

Power product – but that the negotiations concluded without agreement or

execution of the amendment. That fact alone is sufficient to demonstrate that SCO

was reasonably entitled to believe that IBM would not proceed as if the parties had

executed the Supplement. (Dkt. 369 at 3-4.)

*Fifth*, IBM's decidedly fact-based arguments (at 17) about SCO's supposed

constructive knowledge of IBM's infringement were inappropriately resolved as a

matter of law. *See, e.g.*, *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1039-41

(9th Cir. 2000) (holding that the question of whether copyright holder "should have

known" of infringement presents fact issues precluding summary disposition).

(Dkt. 369 at 10-11.)

*Sixth*, IBM oddly references publications that SCO had not seen at the time (and had no reason to see). Such documents therefore could not possibly show that SCO had already been put on notice of IBM's sinister plan. (Dkt. 369 at 3.)

The district court's error mirrored IBM's fatally flawed analysis. The district court abused its discretion by refusing to allow SCO the opportunity to plead its valid claim based on the court's unreasoned reliance on what "appears" to be possible constructive knowledge only when IBM's false characterization of the documents is adopted without meaningful scrutiny. In addition, but for IBM's discovery delays, SCO likely would have been in position to bring its copyright infringement claim sooner. SCO served its document requests beginning *in June 2003* – well before the deadline for amendments to the pleadings, but IBM did not produce the documents revealing IBM's infringement until March and April 2004. The district court rewarded IBM for delaying its production of the incriminating evidence until after the deadline for amendments had run. On this basis alone, SCO's proposed amendment cannot be termed unduly delayed. (Dkt. 369 at 12.)

## B.    Rule 15(a) Provides That Leave to Amend Should Be Freely Granted

IBM has presented no legitimate argument that SCO's amendment should be barred under Rule 15(a)'s liberal standard which instructs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

### 1. SCO Did Not Unduly Delay in Filing Its Motion to Amend Its Complaint

IBM fails even to address the central fact that, notwithstanding SCO's document requests beginning in June 2003, IBM did not produce until March and April 2004 (after the cut-off for amendment of pleadings) the documents evidencing IBM's copying of SCO's code. On this basis alone, SCO's proposed amendment is not "delayed" at all, much less unduly delayed. *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 559 (10th Cir. 1997). (Dkt. 323 at 17-19 (citing cases).)

### 2. SCO's Motion to Amend Did Not Prejudice IBM

IBM claims (at 47) undue prejudice on the grounds that SCO's copyright claim would raise issues that are not part of the current case. IBM is mistaken and does not remotely carry its burden of demonstrating undue prejudice. The crux of IBM's argument (at 48) is that SCO's proposed copyright claim "implicated more than 780,000 lines of additional code, which, by any reasonable estimate, would have required far more discovery." But "an adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading" – even if discovery has been completed. *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608 (PKC)(JCF), 2014 WL 113728, at *2 (S.D.N.Y. Jan. 13, 2014) (citing *DiFilippo v. Barclays Capital, Inc.*, No. 05 Civ. 4990 VM JCF, 2006 WL 1716860 (S.D.N.Y. June 20, 2006)) (quoting *United States v.*

*Continental Illinois Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989)); *see also Michalek v. Amplify Sports & Entertainment LLC*, No. 11 Civ. 508 (PGG), 2012 WL 2357414, at *5 (S.D.N.Y. June 20, 2012) (noting that " 'where the proposed amendment arises from the same set of operative facts as the original claims, or from events closely related to those originally pleaded,' 'the mere fact that discovery has concluded does not provide a reason for denying leave to amend.' ") (quoting *Kreinik v. Showbran Photo, Inc.*, No. 02Civ.1172(RMB(DF), 2003 WL 22339268, at *10 (S.D.N.Y. Oct. 14, 2003)).  In this case, SCO had repeatedly shown the district court that IBM's discovery conduct precluded SCO from obtaining a great deal of relevant evidence before the scheduled end of fact discovery.

IBM's further argument (at 49) that the "law of the case" doctrine precludes SCO's challenge to the district court's narrowing of IBM's own Ninth Counterclaim is a red herring.  SCO is not asking this court to review the district court's grant of summary judgment on the Ninth Counterclaim.  SCO is simply asserting that, given the language of IBM's Ninth Counterclaim at the time it moved to amend its complaint, the addition of the copyright claim was not prejudicial to IBM.  Br. at 56-58.  Notably, the cases that IBM cites offer no support to its extrapolation of the "law of case" doctrine to this issue. *See Crocker v. Piedmont Aviation*, 311 U.S. App. D.C. 1, 49 F.3d 735, 739-40 (1995) (holding

that review was proper even where a party had an opportunity *on a prior appeal* to raise an issue, but waited four years later to raise the issue on another appeal) (emphasis added); *Grynberg Prod. Corp. v. Susman Godfrey, L.L.P.*, No. 10-1248, 2012 U.S. App. LEXIS 3316 (10th Cir. Feb. 16, 2012) (holding that where a party fails to take an appeal on a final judgment, the "law of the case" doctrine precludes that party from raising the issue on appeal in a subsequent matter).

IBM's assertion (at 50-52) that SCO moved to amend its complaint solely in an attempt to delay the litigation defies logic. If any party had incentive to delay the resolution of this case, it was IBM – the defendant – which had far more resources than SCO and the capacity to strangle SCO's business through unfair competition and tortious interference, leading ultimately to SCO's bankruptcy. Indeed, IBM's delay tactics have devastated SCO's business, while IBM continues to reap the financial benefits of its tortious conduct.

### 3. SCO's Proposed Copyright Claim Is Not Futile

IBM incorrectly claims (at 52) that the limitations period set forth in the JDA bars SCO's proposed copyright claim, rendering the claim futile. The Court must strictly construe a contractual provision modifying a statute of limitations. *See Fireman's Fund Ins. Co. v. Warehouse No. 1, Inc.*, No. 89 Civ. 4069, 1989 U.S. Dist. LEXIS 13507, at *11 (S.D.N.Y. Nov. 13, 1989); *Brink's, Inc. v. City of N.Y.*, 528 F. Supp. 1084, 1086 (S.D.N.Y. 1981); *Raymond Int'l, Inc. v. City of N.Y.*,

511 F. Supp. 773, 776 (S.D.N.Y. 1981) (collecting cases).  Section 22.3 of the JDA

provides that "any legal or other action *related to a breach of this Agreement* must

be commenced no later than two (2) years from the date of the breach in a court

sited in the State of New York."  A454-55 § 22.3 (emphasis added).  SCO

proposes to bring a copyright claim, not a claim for breach of the JDA.

The discovery rule, moreover, applies to claims for copyright infringement.

"A claim accrues under the Copyright Act when the copyright holder knows or

reasonably should have known of the infringement."  *In re Indep. Servs. Orgs.*

*Anti-Trust Litig.*, 85 F. Supp. 2d 1130, 1174 (D. Kan. 2000) (citing cases); *see also*

Dkt. 323 at 22 (citing cases).  Under that standard, SCO's claim did not accrue

until 2004, when SCO first learned of IBM's infringement.

# CONCLUSION

SCO respectfully requests, for the foregoing reasons, that the Court reverse the district court's grant of IBM's motion for summary judgment on SCO's claims for unfair competition and tortious interference, and reverse the district court's denial of SCO's motion for leave to file a third amended complaint to add a copyright infringement claim against IBM.

Respectfully submitted this 21st day of November, 2016.

s/ Edward Normand                         Stuart Singer
Edward Normand                            BOIES, SCHILLER & FLEXNER LLP
Jason Cyrulnik                            401 East Las Olas Blvd., Suite 1200
BOIES, SCHILLER & FLEXNER LLP             Fort Lauderdale, FL 33301
333 Main Street                           Telephone: 954-356-0011
Armonk, NY 10504                          Facsimile: 954-356-0022
Telephone: 914-749-8200
Facsimile: 914-749-8300

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, UT 84101
Telephone: 801-363-6363
Facsimile: 801-363-6666

*Attorneys for Plaintiff/Counterclaim-Defendant–Appellant, The SCO Group, Inc.*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,079 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

3.      I further certify that no privacy redactions are required under this Court's Policies and Procedures.

Dated: November 21, 2016

/s/ Edward Normand
Edward Normand
Boies, Schiller & Flexner LLP
333 Main St.
Armonk, NY 10504
T: (914) 749-8237
F: (914) 749-8300
enormand@bsfllp.com

# CERTIFICATE OF DIGITAL SUBMISSION

The undersigned certifies with respect to this filing that no privacy redactions were necessary. This **REPLY BRIEF FOR PLAINTIFF COUNTERCLAIM DEFENDANT-APPELLANT** submitted in digital form is an exact copy of the written document filed with the Clerk. The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program (using Symantec Antivirus which is updated weekly) and, according to the program, is free of viruses.

Dated: November 21, 2016

/s/ Edward Normand
Edward Normand
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504
Telephone: 914-749-8200
Facsimile: 914-749-8300
enormand@bsfllp.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the **REPLY BRIEF**

**FOR PLAINTIFF COUNTERCLAIM DEFENDANT-APPELLANT** was

served on this 21st day of November 2016 by the CM/ECF filing system to

the following:

David Marriott
Evan Chesler
Cravath, Swaine & Moore
825 Eighth Avenue
New York, NY 10019-7475
dmarriott@cravath.com
echesler@cravath.com

Peter H. Donaldson
Durham Jones & Pinegar
111 East Broadway, Suite 900
Salt Lake City, UT 84111
pdonaldson@djplaw.com

Amber M. Mettler
Amy F. Sorenson
Alan L. Sullivan
Snell & Wilmer
15 West South Temple, Suite 1200
Salt Lake City, UT 84101-1531
amettler@swlaw.com
asorenson@swlaw.com
asullivan@swlaw.com

*Counsel for Appellee*

On the same day as above, I served 2 copies of the within Reply Brief though
the Overnight Next Day Air Federal Express, postage prepaid, upon

David Marriott (*Counsel of Record)*
Roger G. Brooks
Thomas G. Rafferty
Cravath, Swaine & Moore
825 Eighth Avenue
New York, NY 10019-7475

I also hereby certify that on this day I caused seven (7) true and correct copies of the Reply Brief to be transmitted to the Clerk of this Court by a third-party commercial carrier for delivery within two (2) business days.

*/s/ Edward Normand*
Edward Normand